# IN THE COURT OF APPEALS OF IOWA

No. 15-1156
Filed September 10, 2015

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**R.M., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Bryan Webber of Carr & Wright, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda Johnson, Assistant County Attorney, for appellee State.

Paul White, Des Moines, for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

A father appeals from the order terminating his parental rights to his child, contending the juvenile court erred in finding the child could not be returned to him at the present time and termination was in the child's best interest. In the alternative, he argues the court should have placed the child with his sister rather than in foster care. Because our findings align with those of the juvenile court, we affirm.

## I. Background Facts and Proceedings.

M.M., born in February 2010, came to the attention of the department of human services (DHS) in April 2011 based upon the biological mother's (K.H.) arrest for child endangerment due to her being intoxicated while caring for the child. Initially the case was treated as an eligible-services case, and the child was placed with the father (R.M.) pursuant to a DHS safety plan. After a series of incidents—including the child's elder half-sibling reporting the mother's ongoing alcohol abuse to DHS—a child-in-need-of-assistance (CINA) petition was filed on May 24, 2012.

M.M. was adjudicated a CINA on July 17, 2012. Placement with the father was confirmed, and the goal of the juvenile proceeding was reunification with the mother. The mother was to seek out help regarding her substance abuse and mental health issues. However, due to ongoing concerns that the father was allowing the mother access to the child and failing to ensure the child regularly attended therapy, M.M. was removed from the father's care on August 13, 2013, and placed in the home of her half-sibling's father. The mother was not addressing her substance abuse issues or her mental health issues and was

found to be too dangerous to have contact with M.M. The juvenile court found the new permanency goal was reunification with the father and the efforts to reunify with the mother would cease.

On September 18, 2013, the child was placed with a paternal aunt, S.W., under DHS supervision. On November 25, 2013, a termination proceeding as to the mother was held, and the court subsequently terminated the rights of the mother to M.M.

On April 11, 2014, the juvenile court entered an order placing the child back with the father. That placement was confirmed at the hearing held on April 29, 2014, and the case was scheduled to auto-close on July 29, 2014. However, in late July 2014, DHS informed the court that family members had reported the father and child were spending a great deal of time at K.H.'s home and K.H. was caring for the child unsupervised. In early August 2014, when DHS confirmed the father had been lying to DHS about the extent of his and the child's contact with K.H., the child was once again removed from the father's care and placed in a foster home.

In its September 30, 2014 order, the juvenile court adopted a revised case permanency plan for the continued permanency goal of reunification with father, which included that the family participate in family safety, risk, and permanency (FSRP) services; family interactions be at the discretion of DHS; the child continue to participate in individual therapy; the father participate in the child's therapy at the recommendation of the therapist to understand the impact of his behaviors and actions on the well-being of the child; the father not allow the child to have any contact with K.H. without the specific approval of the child's

therapist, and then only under circumstances and conditions recommended by the child's therapist; the father reengage in individual therapy to gain insight into his relationship with K.H., how his behaviors and actions impact his family, and establishing healthy boundaries in his life.

Unfortunately, the father did not follow the plan.

A petition to terminate the father's parental rights was filed on March 20, 2015, and a hearing was held on May 14, 2015. The father testified he was ready to care for the child. He acknowledged K.H. should not have contact with the child "[b]ecause [K.H.] needs to address issues and conquer her demons." However, he asserted he was able to protect the child from K.H. as he planned to move away where K.H. would not know where they were and, because K.H. did not have a car, could not get to the child. He asked the court that if the child was not returned to him that she should be placed with his sister.

On June 22, the juvenile court issued extensive findings and conclusions, including:

> [The father] proclaimed that [the child] has had "zero contact" with [K.H.] since August 2014. While this may be true, [The father] cannot take the credit for it. His own contact with [the child] has been limited since that time, and has remained supervised. The record in the drawn-out CINA proceeding overwhelmingly demonstrates that every time [the father] has had the opportunity, he allows the child's manipulative, dangerous mother right back into a prominent role in her life, and attempts to hide that contact from the professionals involved in [the child]'s case.
> [The father] is able to attend to and provide for [the child]'s basic needs. He shares a close, loving relationship with her. They are bonded. The bond is not, however, entirely healthy, as [the father] has employed the child in his ongoing attempts to deceive the Court and the professionals in the CINA proceeding about his and the child's relationship with [K.H.].

At the time of the termination hearing, [the child] was five years and three months old. She has now been under DHS supervision for four years, over three quarters of her life. During this time, and because of the actions of her mother and father, this child has lived with her mother, her father while at his mother's home, her father in his own home, her sister's father, her aunt, her father again, and two different foster homes. She has suffered anxiety and confusion as a result of this instability. Her father, sometimes with the help of his family, has allowed the child's manipulative, dangerous mother to continue to play a prominent role in her life all along the way, and involved the child in the ongoing deception regarding that role. This has exacerbated the child's anxiety and confusion. The instability, anxiety and confusion for this child needed to end a long time ago.

The court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2015). The court determined placement with the father's sister, E.A., was not in the child's best interests. The father appeals.

## II. Scope and Standard of Review.

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Although we are not bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is considered "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

## III. Analysis.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The court must initially

determine whether a ground for termination under section 232.116(1) is established. *Id.* If a ground for termination is established, the court must next apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. *Id.* If the statutory best-interest framework supports termination of parental rights, the court must finally consider if any statutory exceptions or factors set out in section 232.116(3) weigh against termination of parental rights. *Id.* In the case before us, the second and third factors are intertwined and will be addressed together.

**A. Grounds for Termination.** When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. Section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence a child over the age of four who has been adjudicated a CINA and removed from the parent's care for at least twelve of the last eighteen months cannot be returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f).

The child is over five years of age, has been adjudicated a CINA, and has been removed from the father's home for fourteen of the last eighteen months. The father challenges the finding that the child cannot be returned to him at present. However, we specifically adopt the juvenile court's findings in this regard:

> [The child] has suffered anxiety and confusion as a direct result of her father facilitating the ongoing relationship with her mother, and involving the child in the ongoing deception regarding that contact. [The father] shows no insight into the damage that he has caused to the child, and no inclination to stop his, and therefore the child's,

relationship with the mother. This is in spite of his recognition that his relationship with the mother is extremely unhealthy, that the mother's problems are still unresolved, that it is not in [the child]'s best interest to have contact with her, and that leaving the child alone with the mother would be a risk to the child's safety. [The father] wants the Court to trust him regarding drawing appropriate boundaries between [the child] and her mother. Yet his actions over the past four years and even since the child was last removed from his care in August 2014 demonstrate that he cannot be trusted to have the child placed back in his care at this time.

Whether due to unwillingness or inability, when visitation was not supervised, the father simply has been unable to avoid the child's contact with the biological mother, whom the father acknowledges is dangerous and unbalanced. The contact was frequent and occurred over the course of many months. The child's safety simply cannot be assured in the father's care.

**B. Best Interests of the Child.** "Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *accord* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord P.L.*, 778 N.W.2d at 40.

*1. Parent-child bond.* The father contends that termination was not in the child's best interests due to the strong bond between the child and him. Section 232.116(3)(c) provides that "[t]he court need not terminate the relationship between the parent and child if the court finds . . . clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." "A finding under

subsection 3 allows the court not to terminate." *A.M.*, 843 N.W.2d at 113.  But the "'factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'"  *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).  This is not such a case because the father has shown he will not protect the child from K.H., whose parental rights were terminated quite some time ago, despite knowing she continues to have unresolved substance abuse and mental health issues.  The father's own appellate brief acknowledges:

> [T]he reality of the situation as to the mother is that based upon the mother's criminal history and alleged criminal associates, it appears likely that she will continue to search for and engage with the minor child of the parties regardless of whomever placement may be with and regardless of the orders of the Court.

In light of the father's refusal to cease his relationship with K.H., this acknowledgment does not inspire confidence in his ability to protect the child. *See In re D.C.*, 436 N.W.2d 644, 645 (Iowa Ct. App. 1988) (noting a parent's past conduct is a good indication of how the parent will behave in the future).

    ***2. Placement with paternal aunt.***  The father also argues the juvenile court erred in declining to place the child with his sister, E.A.  But we again find the court's reasoning on this matter persuasive.  The court observed that placing the child with the father's sister "will likely result in a repeat of the cycle that has plagued this child throughout the past four years."  The sister testified she believed the father should remain in the child's life and that he could be trusted to keep proper boundaries between the child and K.H.  *Cf. id.*  We agree with the

trial court, "This child needs a permanent custodian. The court simply cannot trust that placement with [the sister] will not result in the child being subjected to the same harms inflicted through a continuing relationship with her father and mother."

Because grounds for termination exist and termination will allow the child the permanence she needs, we affirm the termination of the father's parental rights.

**AFFIRMED.**